UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

S.Y.,

          Plaintiff,

v.                              Case No:  2:20-cv-619-JES-MRM

WYNDHAM  HOTELS  &  RESORTS,
INC.  and  LAXMI  OF  NAPLES,
LLC,

          Defendants.

_____

## OPINION and ORDER

This matter comes before the Court on review of the following
two motions to dismiss: (1) defendant Wyndham Hotels & Resorts,
Inc.'s Motion To Dismiss Plaintiff's Complaint (Doc. #14) filed on
September 30, 2020; and (2) defendant Laxmi of Naples, LLC's Motion
to Dismiss, Motion to Strike, or For a More Definite Statement and
Memorandum of Law in Support Thereof (Doc. #13) filed on September
28, 2020. Plaintiff filed an Opposition (Doc. #20) on September
28, 2020.  Plaintiff filed a Memorandum in Opposition to each
motion (Doc. #37; Doc. #41) on November 2nd, and November 4, 2020.
Defendant Wyndham Hotels & Resorts, Inc. filed a Reply (Doc. #48)
on November 30, 2020. For the reasons set forth below, the motions
are denied.

The origins of this case began on October 30, 2019, when Plaintiff and another alleged victim of sex trafficking filed a case in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida. See S.Y. et al v. Naples Hotel Co.et al, Case No. 2:20-cv-118 (Doc. #1, p. 3). On December 31, 2019, the Plaintiffs filed a First Amended Complaint which asserted ten claims against over forty defendants. Id. at (Doc. #1, pp. 2-4). The case was removed to federal court in February 2020. Id. at (Doc. #1). On April 15, 2020, the Plaintiffs filed a Second Amended Complaint. Id. at (Doc. #85). On August 5, 2020, the undersigned denied various motions to dismiss, but determined severance of the parties was appropriate. S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1258-59 (M.D. Fla. 2020). Following the Court's severance order, plaintiff and the other alleged victim filed nearly thirty new actions against various defendants, including this case.

The Complaint (Doc. #1) in this case was filed on August 19, 2020, alleging that plaintiff S.Y. was a resident of Collier County, Florida, and was a victim of continuous sex trafficking at a certain Super 8 Wyndham Hotel in Naples, Florida (the Super 8) between 2014 and February 2016. (Id. at ¶¶ 13-14, 22-24.) The Complaint further alleges that during this time period defendants Wyndham Hotels & Resorts, Inc. and Laxmi of Naples, LLC (Defendants, or Wyndham or Laxmi) are hotel owners, operators,

managers, supervisors, controllers, and/or entities responsible for hotels at which sex trafficking has taken place, including the Super 8.[1] (Id. at ¶ 2.)

The Complaint sets forth the following six claims: violation of the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), 18 U.S.C. § 1595 (Count I); violation of the Florida RICO statute, § 772.104, Florida Statutes (Count II); premise liability (Count III); negligent hiring, supervision, and retention (Count IV); negligent rescue (Count V); and aiding and abetting, harboring, confining, coercion, and criminal enterprise (Count VI). (Id., pp. 33-49.) Counts I through IV are asserted against both Defendants, while Counts V through VI are asserted against only Laxmi. (Id.)

---

[1] The Complaint alleges that defendants Wyndham Hotels and Laxmi were collectively doing business as Super 8 Wyndham Hotel in Naples, Florida, and upon information and belief, were authorized to do, licensed to do, and were doing business in the State of Florida. (Doc. #1, ¶ 27.) In addition, it is alleged that Defendants Wyndham Hotels and Laxmi were, by and through their agents, servants, franchisees and/or employees, the owners, operators, managers, supervisors, controllers, and innkeepers of the Super 8 in Naples, Florida. (Id. at ¶ 28.) Finally, The Complaint alleges that Wyndham is the franchisor of the Super 8 brand (Doc. #1, ¶¶ 25, 40-54), while Wyndham asserts that it is the "ultimate parent company of the franchisor of the Super 8® brand of hotels." (Doc. #14, p. 2.) At this stage of the proceedings, factual disputes are resolved in favor of the allegations in the Complaint.

## II.

Defendant's motions seek to have the Court strike several allegations in the Complaint, as well as raise several arguments as to why the Complaint in its entirety, and each individual claim should be dismissed. (Doc. #13, pp. 4-23; Doc. #14, pp. 5-25.) The Court will address each of these arguments in turn.

### A. Shotgun Pleading

Each Defendant argues in its motions, that the Complaint constitutes a shotgun pleading based upon Plaintiff grouping the Defendants together as the "Super 8 Defendants" (Doc. #1, p. 1 introductory paragraph) and should be dismissed. (Doc. #13, pp. 7-9; Doc. #14, pp. 5-6.)

One way in which a complaint may constitute an impermissible shotgun pleading is if it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015); see also Barmapov v. Amuial, 986 F.3d 1321, 1325 (11th Cir. 2021). Such a pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," Weiland, 792 F.3d at 1323, and violates the requirement that a plaintiff provide "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2).

The Complaint does in fact repeatedly references the defendants collectively as the "Super 8 Defendants." The failure to specify a particular defendant is not fatal, however, when "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." Auto. Alignment & Body Serv. v. State Farm Mut. Auto. Ins. Co., 953 F.3d 707, 733 (11th Cir. 2020)(quoting Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000)). The Complaint typically (but not always) alleges that "each and every" such defendant was involved in the activity described in the particular paragraph of the Complaint. See (Doc. #1, ¶¶ 4-5, 8-18, 55-62, 69-83, 87-88, 97-98, 102-08, 126-43, 145, 147-50, 153-56, 162-67, 169-73, 176-207.) A fair reading of the Complaint is that each of these defendants was involved in the identified conduct attributed to the "Super 8 Defendants." See Sprint Sols., Inc. v. Fils-Amie, 44 F. Supp. 3d 1224, 1226-27 (S.D. Fla. 2014)(finding that reference to "defendants" in a complaint was not fatal where pleading alleged that each of the two defendants perpetrated the wrongs, often acting together). While defendants may disagree that such allegations are accurate, that dispute is for another day. The group allegations do not fail to state a claim, Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co., 953 F.3d 707, 732-33 (11th Cir. 2020), and the Complaint does not constitute a shotgun pleading.

## B. Redundant, Irrelevant, and Scandalous Factual Allegations

In its Motion, Laxmi notes that this Court previously ordered Plaintiff to remove those allegations "regarding sex trafficking in general and its relationship to the hospitality industry." S.Y., 476 F. Supp. 3d at 1259. Defendant Laxmi, however, argues that contrary to the Court's prior directive, Plaintiff has included redundant, irrelevant, and scandalous allegations in her Complaint that should be struck. (Doc. #13, pp. 4-7.)

Pursuant to Rule 12(f), a party may move to strike "any redundant, immaterial, impertinent, or scandalous matter" within the pleadings. The Court enjoys broad discretion in determining whether to grant or deny a motion to strike. Northrop & Johnson Holding Co. v. Leahy, No. 16-cv-63008-BLOOM/Valle, 2017 U.S. Dist. LEXIS 193365, at *3 (S.D. Fla. Nov. 22, 2017). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Monsoon, Inc. v. BizJet Int'l Sales & Support, Inc., No. 16-80722-CV-MARRA/MATTHEWMAN, 2017 U.S. Dist. LEXIS 26987, at *28 (S.D. Fla. Feb. 27, 2017). It is not intended to "procure the dismissal of all or part of a complaint." Id. A motion to strike is a drastic remedy and is disfavored by the courts. Schmidt v. Life Ins. Co. of N. Am., 289 F.R.D. 357, 358 (M.D. Fla. 2012). Therefore, a motion to strike should be granted only if "the matter sought to

be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." Id.

Defendant urges the Court to strike ten paragraphs in the Complaint that it maintains contain "puffing" about sex trafficking and its alleged relationship to the hotel industry, scandalous matter about Laxmi's knowledge of the tactics of sex traffickers, and that such tactics are used against children. (Doc. #13, pp. 6-7.) Upon review of these allegations (Doc. #1, ¶¶ 3-5, 55-57, 78-80, 146), the Court finds the majority of them relate to Defendant's knowledge of sex trafficking, its failure to prevent the alleged criminal conduct, and Defendants' profiting from the sex trafficking industry. Such allegations are relevant to the type of claims plaintiff asserts, S.Y., 476 F. Supp. 3d at 1259 n.5, and the Court does not find any to be overly redundant or unduly prejudicial. See Schmidt, 289 F.R.D. at 358. Admittedly, general allegations of sex trafficking in paragraph three and tactics of sex traffickers implemented against children in paragraph five may be immaterial, but the Court cannot say that these allegations are unduly prejudicial to justify the "drastic" remedy sought. Schmidt, 289 F.R.D. at 358. The Court therefore denies Defendant's request to strike the aforementioned allegations.

**C. Failure To State a Claim**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzaín, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### 1. Trafficking Victims Protection Reauthorization Act

Defendant Wyndham challenges Count I of the Complaint, alleging that Defendants violated the TVPRA, 18 U.S.C. § 1595. (Doc. #14, pp. 6-16.)  The TVPRA provides a civil remedy to victims of certain types of human trafficking.  The civil remedy portion of the Act provides:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  The phrase "a violation of this chapter" refers to Chapter 77 of Title 18 of the United States Code.  The only violation of Chapter 77 relevant to this case is contained in 18 U.S.C. § 1591(a), which provides in relevant part:

> (a)  Whoever knowingly –
>
>   (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides,

> obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). To state a section 1595(a) claim in this case, Plaintiff must plausibly allege that she was a victim of a criminal offense under section 1591(a), and then must plausibly allege that Defendant (1)"knowingly benefit[ted] financially or by receiving anything of value," (2) from participation in a venture, (3) which Defendant "knew or should have known has engaged in" sex trafficking under section 1591(a). S.Y., 476 F. Supp. 3d at 1255-56 (citing A.B. v. Marriott Int'l, Inc., 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)).

Wyndham argues the Complaint's allegations are insufficient to state a claim under section 1595(a), asserting four pleading deficiencies. (Doc. #14, pp. 6-16.)

### (a) "Participation" in a "Venture"

Wyndham first argues that the Complaint lacks well-pled allegations that it participated in a "venture," as required by

section 1595(a).  (Doc. #14, pp. 6-10.)  Drawing on the definition

of "venture" used in the criminal portion of the statute, 18 U.S.C.

§ 1591(e)(6)[2], Wyndham asserts that a "venture" requires two or

more individuals "associated in fact."[3]  (Doc. #14, p. 6.)

Borrowing from the federal RICO definition of "enterprise,"

Wyndham argues that "associated in fact" requires that persons

must operate as a "continuing unit that functions with a common

purpose."  (Id., p. 7.)  Wyndham continues that in the context of

a TVPRA claim against a hotel operator, the Complaint must "at

least" allege a "continuous business relationship between the

trafficker and the hotels such that it would appear that the

trafficker and the hotels have established a pattern of conduct or

could be said to have a tacit agreement."  (Id., p. 8) (quoting

M.A. v. Wyndham Hotels & Resorts, Inc., 425 F. Supp. 3d 959, 970

(S.D. Ohio 2019)); see also Doe v. Rickey Patel, LLC, No. 0:20-

60683, 2020 U.S. Dist. LEXIS 195811, at *14 (S.D. Fla. Sep. 29,

2020)("In order to plead defendants participated in a venture,

plaintiff must allege facts from which the Court could reasonably

---

[2] "The term 'venture' means any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6).

[3] Wyndham notes that it is not seeking to impute the definition of "participation in a venture" from the criminal provision in section 1591(e)(4), but suggesting that the Court should apply the definition of "venture" for section 1591(e)(6) and the ordinary meaning of the term as construed by at least two appellate courts.  (Doc. #14, p. 9 n.4.)

infer the hotels could be said to have a tacit agreement with the trafficker."). Wyndham concludes that "[a] commercial relationship, such as a hotel owner renting a hotel room, does not give rise to a reasonable inference that the participants in such a relationship shared a common purpose or otherwise 'associated in fact.'" (Doc. #14, p. 8.)

Here, the Complaint alleges Wyndham participated in a venture "by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff S.Y. for commercial sexual exploitation by repeatedly renting rooms at Super 8 Wyndham Hotel to people" Wyndham and Laxmi "knew or should have known were engaged in sex trafficking."[4] (Doc. #1, ¶ 158.) The Complaint also alleges why Wyndham should have been on notice of the sex trafficking and how it failed to prevent it. (Id. ¶¶ 4-16, 56-83, 120-22.) The Court finds the allegations in the Complaint sufficient to allege participation in a venture under section 1595(a). See Doe, 2020 U.S. Dist. LEXIS 195811, at *14 ("The Court finds it sufficient for Plaintiff to plead that Defendants participated in a venture by renting rooms to individuals that knew or should have known were involved in a sex-trafficking venture, including the sex-trafficking victim.");

---

[4] Wyndham cites the same paragraph in its motion, but fails to recite the complete sentence. (Doc. #14, p. 9.)

<u>M.A.</u>, 425 F. Supp. 3d at 971 ("This Court finds Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants rented rooms to people it knew or should have known where [sic] engaged in sex trafficking.").

Wyndham also argues that "participation" in a venture requires an allegation of an overt act in furtherance of the venture, and that failure to prevent sex trafficking is not such an overt act. (Doc. #14, pp. 8-9.) The Court is not convinced. <u>S.Y.</u>, 476 F. Supp. 3d at 1256 ("In the absence of any controlling authority, the Court concludes that actual 'participation in the sex trafficking act itself' is not required to state a claim under section 1595. Accordingly, plaintiffs' failure to allege such actual participation is not fatal to its section 1595 claim under the TVPRA."). Wyndham has not identified any controlling authority to the contrary.

### (b) Knowingly Benefited From Participating in Venture

Wyndham next argues that the Complaint insufficiently alleges that it knowingly benefitted *from* participating in a venture that committed TVPRA crimes, with knowledge of the causal relationship. (Doc. #14, p. 10-11.) Wyndham asserts that the allegation that it financially benefited from its relationship with the franchisees because it received franchise fees is insufficient,

since that money is not "from" any act by Wyndham that could plausibly constitute "participation" in a TVPRA "venture." (Id.)

The Complaint alleges the Defendants knowingly benefited from the sex trafficking of plaintiff "by receiving payment for the rooms rented for Plaintiff S.Y. and her traffickers at the Super 8 Wyndham Hotel," and by receiving "other financial benefits in the form of food and beverage sales and ATM fees from those persons who were engaging in sex trafficking." (Doc. #1, ¶ 154.) As to Wyndham as franchisor, the Complaint alleges it "received a significant franchise fee and continuous royalties on the Super 8 Wyndham Hotel's gross revenue," while also exercising "ongoing and systematic control over operations at the Super 8 Wyndham Hotel." (Id. at ¶¶ 43, 111.) The Court finds such allegations sufficient to satisfy the "knowingly benefitted" element. S.Y., 476 F. Supp. 3d at 1257; Doe S.W. v. Lorain-Elyria Motel, Inc., 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020); H.H. v. G6 Hosp., LLC, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019); M.A., 425 F. Supp. 3d at 965.

### (c) Knew or Should Have Known that Venture was Committing Sex Trafficking Crimes

Wyndham argues the Complaint fails to plausibly allege that it knew or should have known that the "venture" was engaging in sex-trafficking crimes, i.e., that Wyndham knew or should have known that an adult plaintiff was caused to engage in commercial

sex by force, threats of force, fraud, or coercion. (Doc. #14, pp. 11-13.) Rather, Wyndham argues, the Complaint only alleges that the hotel staff did not interfere with plaintiff and witnessed indicia of commercial sex activity. (Id. p. 11.) Wyndham argues that the allegations do not give rise to a reasonable inference that it knew or should have known about any forced commercial sex activity at the Super 8 Hotel. (Id.)

The Court disagrees with this argument. First of all, "knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1215 (11th Cir. 2018). Pleading "generally" is not without limits, and a complaint must still comply with "the less rigid—though still operative—strictures of Rule 8." Iqbal, 556 U.S. at 686-87. The Complaint clearly satisfies this notice pleading standard.

Plaintiff has alleged that the following was "routine conduct taking place at the Super 8 Wyndham Hotel as a result of the human sex trafficking enterprise":

    a. Plaintiff's sex traffickers frequently rented rooms
       at the hotel close to each other;

    b. Plaintiff's sex traffickers would rent multiple rooms
       – one to be used for sex trafficking and the other to
       be used for drug sales;

    c. Plaintiff's sex traffickers often paid cash for the
       rooms at the Super 8 Wyndham Hotel where the Plaintiff
       engaged in commercial sex acts;

d. Plaintiff's sex traffickers booked extended stays at the Super 8 Wyndham Hotel for themselves and for the Plaintiff on a routine basis and on a rotating basis frequently throughout the year;

e. Plaintiff and her sex traffickers would have few or no luggage or personal possessions for these extended stays;

f. Plaintiff was confined in the rooms at the Super 8 Wyndham Hotel for long periods of time;

g. Plaintiff's rooms and her sex traffickers' rooms consistently displayed "Do Not Disturb" signs on the doors to the room where the Plaintiff was engaged in commercial sex acts;

h. Men ("Johns") frequently entered and left the rooms at the Super 8 Wyndham Hotel where the Plaintiff was engaged in illegal commercial sex acts at all times of day and night;

i. The staff and customers at the Super 8 Wyndham Hotel that was owned, operated, managed, supervised, controlled and/or otherwise held responsible by each and every Super 8 Defendant saw that the rooms where the Plaintiff engaged in commercial sex acts were messy, and contained sex and drug paraphernalia and had an unclean smell;

j. The rooms at the Super 8 Wyndham Hotel were filled with evidence of sex trafficking and drug use;

k. Plaintiff's sex traffickers consistently refused housekeeping services and otherwise would prohibit staff from entering their rooms and the Plaintiff's rooms;

l. Plaintiff would frequently request clean towels and linens;

m. Plaintiff dressed in a sexually explicit manner and would walk the hallways of the Super 8 Defendant [sic];

n. The staff at the Super 8 Wyndham Hotel routinely observed sex trafficking activities taking place out

in the open, and injured sex trafficking victims
wandering the halls at all hours;

o. Excessively loud noises would consistently come from
Plaintiff's rooms;

p. During nighttime hours, Plaintiff and her "Johns" and
drug clients would create noise at the Super 8 Wyndham
Hotel and, upon information and belief, would be a
disturbance to other guests using the hotel for their
intended purposes; and

q. While at the hotel, the Plaintiff displayed clear
signs of physical abuse, diminished personal hygiene,
submissiveness and inappropriate attire.

(Doc. #1, ¶ 96.)  Further, the Complaint alleges Wyndham and Laxmi

"knew or should have known about the nature of the sex trafficking

venture at the Super 8 Wyndham Hotel, including as they related to

Plaintiff S.Y." due to the following:

a. Requests by the traffickers to rent rooms near exit
doors;

b. Cash payments for the rooms by the sex traffickers;

c. Refusal of housekeeping services by those persons
engaged in sex trafficking;

d. Excessive used condoms located in the rooms used for
sex trafficking;

e. Excessive requests for towels and linens in the rooms
used for sex trafficking;

f. Hotel staff observing Plaintiff S.Y. and her
traffickers in the hotel;

g. Plaintiff S.Y. being escorted by traffickers in and
around the hotel;

h. Operation of sex trafficking ventures out of the same
hotel room for multiple days or weeks in succession;

> i. Multiple men per day coming and going from the same rooms without luggage or personal possessions;
>
> j. Hotel staff routinely observing the sex trafficking of Plaintiff S.Y. and other sex trafficking victims; and
>
> k. Knowledge of police and EMS activity at the Super 8 Wyndham Hotel and at other locations near the Super 8 Wyndham Hotel that was related to commercial sex work.

(Id. ¶ 155.)

The Court finds these allegations sufficient to reasonably infer the defendants knew or should have known of the sex trafficking venture. S.Y., 476 F. Supp. 3d at 1257; A.B., 455 F. Supp. 3d at 193-94; Doe S.W., 2020 WL 1244192, at *5-6; H.H., 2019 WL 6682152, at *3; M.A., 425 F. Supp 3d at 967-68.

### (d) Vicarious Liability

Finally, Wyndham suggests the TVPRA claim should be dismissed because "[v]icarious liability is not viable under the TVPRA". (Doc. #14, p. 13.) The Court disagrees. See S.Y., 476 F. Supp. 3d at 1257-58 (finding plaintiff made sufficient allegations that franchisor was vicariously liable under section 1595 of the TVPRA to survive dismissal); see also J.C. v. Choice Hotels Int'l, Inc., 2020 WL 6318707, *10 (N.D. Ca. Oct. 28, 2020) (finding plaintiff's vicarious liability claim had "alleged sufficient facts to support a plausible claim that [defendants] received financial benefits from a venture they vicariously participate in (through their

franchisees) that the franchises should have known was engaged in sex trafficking.").

Wyndham also argues that even if it could be held vicariously liable under the TVPRA, plaintiff's allegations "do not give rise to a plausible inference of an agency relationship" between Wyndham and its franchisee, Laxmi. (Doc. #14, p. 14.) Wyndham argues that because the Landham Act requires some degree of supervision by a franchisor, such supervision cannot be the basis for liability. (Id. at 14-16.) The Court finds that the allegations in the Complaint do create such a plausible inference.

"It is well-established that a franchise relationship does not by itself create an agency relationship between the franchisor and franchisee." Cain v. Shell Oil Co., 994 F. Supp. 2d 1251, 1252 (N.D. Fla. 2014). However, "[f]ranchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee, beyond the mere fact of providing contractual franchise support activities." Mobil Oil Corp. v. Bransford, 648 So. 2d 119, 120 (Fla. 1995).

Here, the Complaint alleges Wyndham was in an agency relationship with Laxmi during the relevant time period. (Doc. #1, ¶ 111.) The Complaint further asserts that in a variety of ways Wyndham exercised control over the means and methods of how

Laxmi conducted business, such as by profit sharing, standardized training, standardized rules of operation, regular inspection, and price fixing. (Id. at ¶ 112.) The Court finds such allegations sufficient to support a plausible inference of an agency relationship. See S.Y., 476 F. Supp. 3d at 1258; A.B., 455 F. Supp. 3d at 195-97; Doe S.W., 2020 WL 1244192, at *7; H.H., 2019 WL 6682152, at *6; M.A., 425 F. Supp. 3d at 972.[5]

Because the allegations in the Complaint are sufficient to state a claim under section 1595 of the TVPRA, the Court denies Wyndham's motion for dismissal pursuant to Rule 12(b)(6).

---

[5] Wyndham also suggests such a relationship does not in fact exist, but such a determination "is generally a question of fact for the jury unless the sole basis for the alleged agency rests in the interpretation of a single contract in which case the determination may be a question of law to be determined by the court." Cain, 994 F. Supp. 2d at 1253. Since the Complaint alleges an agency relationship based upon the interaction between Wyndham and Laxmi, this is a question of fact inappropriate to decide on a motion to dismiss. See Banco Espirito Santo Int'l, Ltd. v. BDO Int'l, B.V., 979 So. 2d 1030, 1032 (Fla. 3d DCA 2008) ("Unless the alleged agency relationship is to be proven exclusively by analysis of the contract between the principal and agent (in which case the question is an issue of law), the relationship is generally a question of fact and should be analyzed by looking at the totality of the circumstances."); see also A.B. v. Hilton Worldwide Holdings Inc., 2020 U.S. Dist. LEXIS 163412, 2020 WL 5371459, *10 (D. Or. Sept. 8, 2020) ("Defendants dispute whether they controlled the day-to-day operations of the hotels. Although Plaintiff may ultimately fail to establish the agency allegations, at this stage in the proceedings this Court accepts as true all well-pleaded factual allegations in the complaint and construes them in Plaintiff's favor."); A.B., 455 F. Supp. 3d at 196 ("The evidence may ultimately prove Marriott does not exercise day-to-day control over its Philadelphia Airport hotels, but this is more properly raised after discovery.").

## 2. Florida RICO Violation

In Count II of the Complaint, Plaintiff asserts a claim against both defendants under Florida's civil RICO statute, section 772.104, Florida Statutes. (Doc. #1, p. 35.)  To state a claim under the statute, plaintiff must allege plausible facts showing "(1) conduct or participation in an enterprise through (2) a pattern of [criminal] activity." Horace-Manasse v. Wells Fargo Bank, N.A., 521 F. App'x 782, 784 (11th Cir. 2013) (quoting Lugo v. State, 845 So. 2d 74, 97 (Fla. 2003)).[6]

Each of the motions argue plaintiff has insufficiently pled the enterprise element of her claim. (Doc. #13, pp. 9-14; Doc. #14, pp. 16-19.)  Florida's RICO statute defines enterprise to include a "group of individuals associated in fact although not a legal entity." § 772.102(3), Fla. Stat.  "[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose." Boyle v. United States, 556 U.S. 938, 948 (2009). To sufficiently plead such an enterprise, "a plaintiff must allege that a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the

---

[6] "Since Florida RICO is patterned after federal RICO, Florida courts have looked to the federal courts for guidance in interpreting and applying the act.  Therefore, federal decisions should be accorded great weight." O'Malley v. St. Thomas Univ., Inc., 599 So. 2d 999, 1000 (Fla. 3d DCA 1992); see also Cont'l 332 Fund, LLC v. Albertelli, 317 F. Supp. 3d 1124, 1137 (M.D. Fla. 2018) ("[T]he Eleventh Circuit applies federal RICO analysis equally to Florida RICO claims.").

enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." Cisneros v. Petland, Inc., 972 F.3d 1204, 1211 (11th Cir. 2020) (marks and citations omitted). The motions argue the Complaint fails to sufficiently allege a "common purpose" among the defendants. (Doc. #13, pp. 10-13; Doc. #14, p. 18.)

"The purpose prong contemplates 'a common purpose of engaging in a course of conduct' among the enterprise's alleged participants." Cisneros, 972 F.3d at 1211 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). "An abstract common purpose, such as a generally shared interest in making money, will not suffice. Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." Id. (citations omitted).

Here, the Complaint alleges Laxmi and Wyndham "associated with each other and/or the Plaintiff S.Y.'s sex traffickers for the common purpose of profiting off an established sex trafficking scheme." (Doc. #1, ¶ 161.) Plaintiff asserts this "association-in-fact" constitutes an "enterprise" under Florida's RICO statute, and that the defendants conducted or participated in their enterprises through a pattern of criminal activity, "related by their common purpose to profit off an institutionalized sex

trafficking scheme." (Id. ¶¶ 161-62.)  The Court finds these allegations sufficient to allege the defendants "shared the purpose of enriching themselves through a particular criminal course of conduct." Cisneros, 972 F.3d at 1211; see also United States v. Church, 955 F.2d 688, 697-98 (11th Cir. 1992) (noting that "an association's devotion to 'making money from repeated criminal activity' . . . demonstrates an enterprise's 'common purpose of engaging in a course of conduct'" (citations omitted)); Burgese v. Starwood Hotel & Resorts Worldwide, Inc., 101 F. Supp. 3d 414, 424 (D. N.J. 2015) (on motion to dismiss Florida RICO claim, court found that "Plaintiff's Amended Complaint can be read to allege a 'common purpose' of furthering an institutionalized prostitution scheme to increase profits for the participants," and that "[t]hese allegations, though thin, are sufficient for purposes of this motion.").

Each of the motions also argues the Complaint fails to sufficiently plead the "pattern of criminal activity" element. (Doc. #13, p. 13; Doc. #14, pp. 18-19.)  As previously stated, "[i]n order to state a civil cause of action under the Florida RICO Act, a plaintiff must allege a pattern of criminal activity." Arthur v. JP Morgan Chase Bank, NA, 569 Fed. App'x 669, 682 (11th Cir. 2014) (citing §§ 772.103-104, Fla. Stat.).  The statute's definition of "criminal activity" provides "that a particular state law crime can serve as the predicate act for a RICO claim if

it is 'chargeable by indictment or information' and falls within a series of specified provisions." Id. (citing § 772.102(1)(a), Fla. Stat.). "In order to establish a pattern of criminal activity, the plaintiff must allege two or more criminal acts 'that have the same or similar intents, results, accomplices, victims, or methods of commission' that occurred within a five-year time span." Id. at 680 (citing § 772.102(4), Fla. Stat.).

As noted by Wyndham (Doc. #14, p. 19), plaintiff's Florida RICO claim is predicated on the commission of human trafficking crimes in violation of section 787.06, Florida Statutes. (Doc. #1, ¶¶ 163, 165); see also § 772.102(1)(a)15., Fla. Stat. (listing "human trafficking" under Chapter 787 among the types of "criminal activity" covered by the Florida RICO statute). This provision provides various punishments for "[a]ny person who knowingly, or in reckless disregard of the facts, engages in human trafficking, or attempts to engage in human trafficking, or benefits financially by receiving anything of value from participation in a venture that has subjected a person to human trafficking." § 787.06(3), Fla. Stat. Given the similarity between this language and the TVPRA's civil liability provision, Wyndham argues the Florida RICO claim fails "for the same reasons that Plaintiff failed to state a TVPRA claim." (Doc. #14, p. 19.) The Court has, however, determined plaintiff's TVPRA claim is sufficiently pled, and therefore rejects Wyndham's argument as to the Florida RICO claim.

Laxmi argues the RICO claim fails to allege a pattern of criminal activity because the Complaint "impermissibly groups" the defendants together, and therefore "[i]t is impossible to discern if Laxmi committed two or more predicate acts." (Doc. #13, p. 13.) The Court disagrees. The Complaint alleges plaintiff was trafficked on a "regular, consistent and/or repeated basis" at various hotels in Naples, Florida, and at the Super 8 Hotel from approximately 2014 to February 2016. (Doc. #1, ¶ 84.) The Complaint describes how the sex trafficking occurred at the Super 8 Hotel and the "routine conduct" taking place as a result, as well as alleges Laxmi's employees made promises to the traffickers not to interfere with the trafficking and knowingly turned a blind eye to it. (Id. at ¶¶ 88, 89-90, 99, 234, 236.) Viewing the allegations in the light most favorable to plaintiff, the Court finds this sufficient to allege two or more predicate acts within the applicable timeframe.

Finally, Laxmi argues the Complaint contains insufficient allegations regarding causation. (Doc. #13, pp. 13-14.) Under the Florida RICO statute, a plaintiff must demonstrate that their injuries were proximately caused by the RICO violations. See Bortell v. White Mountains Ins. Grp., Ltd., 2 So. 3d 1041, 1047 (Fla. 4th DCA 2009). "A wrongful act is a proximate cause if it is a substantive factor in the sequence of responsible causation." Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292,

1307 (11th Cir. 2003) (marks and citation omitted). Furthermore, a plaintiff "must show a 'direct relation between the injury asserted and the injurious conduct alleged.'" Id. (quoting Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992)). "Indirect harm is insufficient to sustain a cause of action under the RICO statutes." Bortell, 2 So. 3d at 1047; see also O'Malley, 599 So. 2d at 1000 ("[I]ndirect injuries, that is, injuries sustained not as a direct result of predicate acts . . . will not allow recovery under Florida RICO.").

Laxmi argues that the Complaint contains no plausible allegations that it engaged in any conduct that was the proximate cause of plaintiff's alleged injuries. (Doc. #13, p. 14.) Laxmi also notes that the Complaint "is void of any allegation that that [sic] Laxmi had specific knowledge of Plaintiff." (Id.) Plaintiff responds that she has sufficiently pled proximate cause and consequential damages by alleging she "was at the Super 8 Motel as part of the sexual trafficking scheme and her injuries were caused by and in furtherance of the sexual trafficking scheme." (Doc. #37, p. 16.) Having reviewed the allegations in the Complaint, the Court agrees with plaintiff.[7]

---

[7] Unlike the federal RICO statute, "the Florida statute does not expressly limit recovery . . . to persons who have suffered injury to their 'business or property,' language which has been interpreted to exclude economic losses arising out of personal injuries." Berber v. Wells Fargo Bank, N.A., 2018 WL 10436236, *3 (S.D. Fla. May 24, 2018); see also Townsend v. City of Miami,

The Complaint alleges each of defendants "was on notice of repeated incidents of sex trafficking occurring on their hotel premises," and yet "failed to take the necessary actions to prevent sex trafficking from taking place." (Doc. #1, ¶ 60.) The Complaint also alleges numerous ways in which these defendants could have identified and prevented the sex trafficking from occurring. (Id. at ¶¶ 62-77.) Finally, the Complaint alleges the "acts and omissions of the Super 8 Defendants served to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization" of plaintiff "for commercial sexual exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking." (Id. at ¶ 129.) "[B]y knowingly, or with reckless disregard, repeatedly allowing sex trafficking to occur on their premises between 2014 and 2016," the defendants' "acts have yielded consistent results and caused economic, physical, and psychological injuries" to plaintiff. (Id. at ¶¶ 164, 167.)

The Court finds these allegations sufficient to plead a "direct relation between the injury asserted and the injurious conduct alleged," Holmes, 503 U.S. at 268, and therefore the

2007 WL 9710944, *2 (S.D. Fla. Nov. 7, 2007) ("Unlike its federal counterpart, the Florida RICO statute is not limited to 'business or property' injuries. . . . The plain language of the Florida statute does not exclude pecuniary losses resulting from personal injury. Accordingly, Mr. Townsend can sue under the Florida RICO statute for his loss of employment and personal injuries.").

Complaint adequately pleads proximate cause. See Burgese, 101 F. Supp. 3d at 422 (finding allegations of physical injury and mental anguish "cognizable under the Florida RICO Act" and sufficient to survive a motion to dismiss); cf. Berber, 2018 WL 10436236, at *5 ("Because Plaintiffs' asserted injuries arise from a set of actions entirely distinct form [sic] the alleged predicate RICO violations, proximate cause is lacking as a matter of law.").

### 3. Premise Liability

Count III of the Complaint asserts a claim of premise liability against each defendant (Doc. #1, ¶ 173), which is a form of negligence action. "The elements for negligence are duty, breach, harm, and proximate cause; the additional elements for a claim of premises liability include the defendant's possession or control of the premises and notice of the dangerous condition." Lisanti v. City of Port Richey, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). Plaintiff alleges Defendants owed her a variety of duties, that they breached these duties, and that as a direct and proximate result, she suffered bodily injury. (Doc. #1, ¶¶ 176-91.) Plaintiff also alleges the defendants had actual or constructive knowledge of sex trafficking occurring on the premises, that they knew or should have known the risk of such criminal conduct taking place would be unreasonably high without appropriate precautions, and that they had actual or constructive knowledge of Plaintiff being in dangerous conditions. (Id. at ¶¶ 182-84.)

### (a)    Statute of Limitations

Wyndham argues the premise liability claim should be dismissed because it is barred by the relevant statute of limitations. (Doc. #14, p. 22.) Under Florida law, the statute of limitations for negligence claims is four years. § 95.11(3)(a), Fla. Stat.

A statute of limitations bar is "an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citation omitted). "A dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir. 2018) (marks and citation omitted).

Plaintiff alleges the sex trafficking occurred at the Super 8 Hotel "[f]rom approximately 2014 to February 2016." (Doc. #1, ¶ 84.) Wyndham argues that because the Complaint was filed in August 2020, the premise liability claim is time barred. (Doc. #14, p. 22.)

"Under Florida law, the statute of limitations begins to run when the cause of action accrues." Carnival Corp. v. Rolls-Royce PLC, 2009 U.S. Dist. LEXIS 107141, 2009 WL 3861482, *5 (S.D. Fla. Nov. 17, 2009) (citing § 95.031, Fla. Stat.). "A cause of action

accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. "Under the continuing tort doctrine, the cause of action accrues when the tortious conduct ceases." Effs v. Sony Pictures Home Entm't, Inc., 197 So. 3d 1243, 1244 (Fla. 3d DCA 2016) (emphasis and citation omitted). "A continuing tort is established by continual tortious acts, not by continual harmful effects from an original, completed act." Id. at 1245 (marks, emphasis, and citation omitted).

Here, plaintiff alleges she was a repeat victim of sex trafficking at the Super 8 Hotel between 2014 and February 2016. The Court finds such allegations sufficient to invoke the continuing tort doctrine. See Nat'l Sourcing, Inc. v. Bracciale, 2018 WL 6172430, *2 (M.D. Fla. Nov. 26, 2018) (finding allegation that a defendant's actions "continued to this day" inferred continuous tortious conduct, thereby making it plausible for the plaintiffs to assert the continuing tort doctrine as a basis to toll the statute of limitations). Accordingly, the Court finds that plaintiff's premise liability claim did not accrue until February 2016, and therefore she had until February 2020 to file a complaint asserting premises liability.

Plaintiff met this deadline by filing her First Amended Complaint against Wyndham on December 31, 2019. S.Y. et al v. Naples Hotel Co. et al, Case No. 2:20-cv-118 (Doc. #1, p. 3). While the Court determined severance of the parties was appropriate

in the original action, S.Y., 476 F. Supp. 3d at 1259, and this Complaint was filed in August 2020, it appears that the December 2019 date is applicable for statute of limitations purposes under the relation-back provisions of Rule 15(c) of the Federal Rules of Civil Procedure.

> Relation back is a legal fiction employed to salvage claims that would otherwise be unjustly barred by a limitations provision. See McCurdy v. United States, 264 U.S. 484, 487, 44 S.Ct. 345, 346, 68 L.Ed. 801 (1924); Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993). Under Rule 15, a claim in an amended complaint relates back to the filing date of the original complaint if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). When the facts in the original complaint do not put the defendant "on notice that the new claims of negligence might be asserted," but the new claims instead "involve[ ] separate and distinct conduct," such that the plaintiff would have to prove "completely different facts" than required to recover on the claims in the original complaint, the new claims do not relate back. Moore, 989 F.2d at 1132.

Caron v. NCL (Bahamas), Ltd., 910 F.3d 1359, 1368 (11th Cir. 2018). Accordingly, since it is not apparent from the face of the Complaint that the claim is time-barred, dismissal based upon the statute of limitations affirmative defense is not appropriate.

For the same reasons, the Court rejects Wyndham's argument that plaintiff's negligent hiring, supervision, and retention claim is also barred by the four-year statute of limitations. (Doc. #14, p. 22.)

**(b)  Failure to State a Claim**

Both defendants argue the premise liability claim is insufficiently pled. (Doc. #13, pp. 14-18; Doc. #14, pp. 19-20.) In seeking to have the claim dismissed, Laxmi first challenges the duty element of the claim.  (Doc. #13, pp. 15-16.)  Under Florida law, a property owner generally owes two duties to an invitee:

> (1) the duty to use reasonable care in maintaining the property in a reasonably safe condition; and (2) the duty to warn of latent or concealed dangers which are or should be known to the owner and which are unknown to the invitee and cannot be discovered through the exercise of due care.

Dampier v. Morgan Tire & Auto, LLC, 82 So. 3d 204, 206 (5th DCA 2012).  Laxmi argues that it did not have a duty to warn plaintiff of the danger of sex trafficking because plaintiff was aware of the trafficking herself.  (Doc. #13, pp. 15-16); see also Emmons v. Baptist Hosp., 478 So. 2d 440, 442 (Fla. 1st DCA 1985) ("A prerequisite to the imposition upon the landowner of a duty to warn is that the defendant's knowledge of the danger must be superior to that of the business invitee.").  However, plaintiff's premise liability claim is not based upon a duty to warn, but rather a duty to maintain the property in a reasonably safe condition.  (Doc. #1, ¶¶ 177-81.)  Accordingly, Laxmi's argument as it relates to a duty to warn is irrelevant.  See Dampier, 82 So. 3d at 206 ("The open and obvious nature of a hazard may discharge a landowner's duty to warn, but it does not discharge

the landowner's duty to maintain the property in a reasonably safe condition.").

Alternatively, Wyndham first argues the premise liability claim fails because it does not allege that Wyndham possessed or controlled the Super 8 Hotel. (Doc. #14, pp. 19-20.) The Court disagrees. As noted, a premise liability claim requires a defendant possess or control the premises at issue. Lisanti, 787 So. 2d at 37. Here, the Complaint alleges Wyndham and Laxmi were the "owners, operators, managers, supervisors, controllers and innkeepers" of the Super 8 Hotel, and that Wyndham exercised control over the means and methods of how Laxmi conducted business at the hotel. (Doc. #1, ¶¶ 28, 115.) While Wyndham may dispute these allegations, the Court must accept them as true at this stage of the proceedings and finds them sufficient to allege Wyndham had sufficient control of the Super 8 Hotel for premise liability purposes.

Next, Laxmi and Wyndham both argue there could be no duty to protect plaintiff from the criminal conduct of third parties because such conduct was not foreseeable. (Doc. #13, pp. 16-17; Doc. #14, p. 20.) The Court disagrees with this argument as well. "Under Florida law, a business owes invitees a duty to use due care to maintain its premises in a reasonably safe condition. This includes the duty to protect customers from criminal attacks

that are reasonably foreseeable." Banosmoreno v. Walgreen Co., 299 F. App'x 912, 913 (11th Cir. 2008) (citations omitted).

> Foreseeability can be shown by two alternative means. First, a plaintiff may demonstrate that a proprietor knew or should have known of a dangerous condition on his premises that was likely to cause harm to a patron. Second, a plaintiff can show that a proprietor knew or should have known of the dangerous propensities of a particular patron.

Id. (marks, citations, and footnote omitted). Such knowledge must only be pled generally. Fed. R. Civ. P. 9(b).

The Complaint contains sufficient allegations that sex trafficking was occurring at the Super 8 Hotel and that Laxmi and Wyndham knew or should have known of it. (Doc. #1, ¶¶ 56-61, 97-98, 102-08, 155-56.) The Complaint also contains sufficient allegations to support a claim of an agency relationship between Wyndham and Laxmi, and any factual challenge to such a relationship is premature. See Cain, 994 F. Supp. 2d at 1253; Mobil Oil Corp., 648 So. 2d at 120. Accordingly, the Court finds the allegations in the Complaint are sufficient to satisfy the notice pleading requirements.

Finally, Laxmi argues the premise liability claim fails because "Plaintiff cannot establish a causal link between her purported injuries and Laxmi' [sic] purported negligence." (Doc. #13, pp. 17-18.) The Court disagrees. As noted, the Complaint alleges Laxmi was on notice of the sex trafficking occurring at the Super 8 Hotel and not only failed to prevent it, but knowingly

turned a blind eye to it in exchange for increased profits. (Doc. #1, ¶¶ 4, 60, 234, 236.) The Complaint also alleges that as a result of Laxmi's actions, plaintiff suffered various injuries and damages. (Doc. #1, ¶ 191.) Contrary to Laxmi's suggestion that plaintiff's injuries were the result of a "freakish and improbable chain of events," (Doc. #13, p. 17), the Court finds the Complaint sufficiently alleges proximate cause. Accordingly, the Court denies Laxmi and Wyndham's request to dismiss the claim as insufficiently pled.

### 4. Negligent Hiring, Supervision, and Retention

Count IV of the Complaint asserts a claim of negligent hiring, supervision, and retention against each defendant. (Doc. #1, ¶ 192.) "To state a claim under Florida law for negligent hiring, supervision and/or retention, a plaintiff must establish that the employer owed a legal duty to the plaintiff to exercise reasonable care in hiring and retaining safe and competent employees." Clary v. Armor Corr. Health Servs., No. 6:13-cv-90-Orl-31KRS, 2014 U.S. Dist. LEXIS 15633, at *11 (M.D. Fla. Feb. 7, 2014) (citations omitted). "Florida law also holds employers liable for reasonably foreseeable damages resulting from the negligent training of its employees and agents." Id. (citing Lewis v. City of St. Petersburg, 260 F.3d 1260, 1265 (11th Cir. 2001)). "For an employer to owe a plaintiff a duty, the plaintiff must be in the zone of risk that

was reasonably foreseeable to the employer." Id. (citation omitted).

> Accordingly, to state a claim, the plaintiff must allege facts that would establish a nexus between the plaintiff and the tortfeasor's employment from which a legal duty would flow from the defendant-employer to the plaintiff. The plaintiff must then establish that the defendant-employer breached that duty and that the breach caused him damage.

Id. (citations omitted).

The Complaint alleges each Super 8 Hotel defendant was in control of the hiring, instructing, training, supervising, and terminating of the hotel employees, and that each defendant had a duty to make an appropriate investigation of the employees. (Doc. #1, ¶¶ 198-200.) The Complaint further alleges that the defendants knew or should have known that hotel employees were "allowing criminals to rent rooms for prostitution and drug dealing," "failing to either identify and/or report the human sex trafficking and foreseeable harm" of plaintiff, and "failing to refuse continued lodging services to human sex traffickers." (Id. ¶¶ 201-03.) The Complaint concludes that the defendants were negligent in their hiring, employment, supervision, and termination decisions regarding the employees, and that the sex trafficking of plaintiff was a foreseeable and direct result. (Id. ¶¶ 204-08.)

Each of the motions seeks dismissal of the negligent hiring, supervision, and retention claim based on pleading deficiencies.

Laxmi and Wyndham both argue that the claim fails because the Complaint lacks sufficient factual allegations that either defendant knew or should have known of any unfit employees. (Doc. #13, p. 19; Doc. #14, pp. 21-22); see also Bright v. City of Tampa, 2017 WL 5248450, *8 (M.D. Fla. May 17, 2017) ("When an employer fails to take a corrective action against an employee because the employer had no notice of problems with the employee's fitness, the employer is not liable under Florida law for negligent supervision or retention."). The Court disagrees. The Complaint sufficiently alleges facts suggesting sex trafficking was occurring at the hotel, that the employees knew of it and failed to prevent it, and that due to their control over the employees, each defendant knew or should have known of it. (Doc. #1, ¶¶ 88-107-08, 195-203.) The Court finds such allegations sufficient at this stage of the proceedings.

Wyndham also argues the claim should be dismissed because the Complaint does not plausibly allege that Wyndham hired or employed any of the employees at issue. (Doc. #14, p. 22.) The Court is not persuaded, as it has determined the Complaint's allegations of an agency relationship between Wyndham and Laxmi are sufficient.[8]

---

[8] In arguing it did not hire any of the employees, Wyndham asserts it "did not own, operate, manage, or control the franchised hotel at issue." (Doc. #14, p. 22.) However, this conflicts with the Complaint's allegations that Wyndham was one of the Super 8 Hotel's "owners, operators, managers, supervisors, controllers and innkeepers," that Wyndham "exercised ongoing and systematic

Accordingly, the Court denies the request to dismiss the negligent hiring, supervision, and retention claim.

### 5. Negligent Rescue

Plaintiff also asserts a claim for negligent rescue in Count V of the Complaint against Laxmi. (Doc. #1, ¶ 209.) The Complaint alleges Laxmi, as the owner and operator of the Super 8 Hotel, had a duty to keep the premises safe and prevent foreseeable criminal activity, as well as a duty "to make safe a dangerous condition at the Super 8 Wyndham Hotel and to rescue their [sic] hotel guests, specifically Plaintiff S.Y., from the peril they [sic] created." (Id. ¶¶ 211, 214, 220.) The Complaint alleges that by various acts and omissions, Laxmi breached these duties and that the continuous sex trafficking of plaintiff was the direct and foreseeable result. (Id. ¶¶ 216-18, 222-23, 225.)  Laxmi argues the negligent rescue claim should be dismissed because it is insufficiently pled. (Doc. #13, p. 21.)

There is no common law duty to rescue a stranger.  Estate of Ferguson v. Mascara, 2010 WL 11558195, *2 (S.D. Fla. Sept. 7, 2010) (citing Bradberry v. Pinellas Cty., 789 F.2d 1513, 1516 (11th Cir.

---

control over operations" at the hotel, and that Wyndham made "employment decisions." (Doc. #1, ¶¶ 2, 28, 115, 116.)  The Court is required to accept all factual allegations as true, Erickson, 551 U.S. at 94, and "[i]n adjudicating a motion to dismiss, the district court may not resolve factual disputes." Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv., 493 Fed. App'x 994, 995 (11th Cir. 2012).

1986)). "A well-established exception to this rule, however, provides that an innkeeper is 'under an ordinary duty of care to [a guest] after he knows or has reason to know the [guest] is ill or injured.'" De La Flor v. Ritz-Carlton Hotel Co., L.L.C, 2013 WL 148401, *3 (S.D. Fla. Jan. 14, 2013) (quoting L.A. Fitness, Int'l, LLC v. Mayer, 980 So. 2d 550, 557 (Fla. 4th DCA 2008)); see also Abramson v. Ritz Carlton Hotel Co., LLC, 480 Fed. App'x 158, 161 (3d Cir. 2012) ("Generally, there is no duty to affirmatively assist an injured person unless a special relationship, such as that between an innkeeper and its guests, exists between the parties.") (citation omitted).

Laxmi argues the negligent rescue claim should be dismissed because it is insufficiently pled under the "rescue doctrine." (Doc. #13, p. 21.) Under Florida law, the rescue doctrine holds a tortfeasor liable for injuries to a third party who is hurt in attempting to rescue the direct victim of the tortfeasor. Zivojinovich v. Barner, 525 F.3d 1059, 1070 (11th Cir. 2008) (citation omitted). "The basic precept of this doctrine 'is that the person who has created a situation of peril for another will be held in law to have caused peril not only to the victim, but also to his rescuer, and thereby to have caused any injury suffered by the rescuer in the rescue attempt.'" Menendez v. W. Gables Rehab. Hosp., LLC, 123 So. 3d 1178, 1181 (Fla. 3d DCA 2013)

(quoting <u>N.H. Ins. Co. v. Oliver</u>, 730 So. 2d 700, 702 (Fla. 4th DCA 1999)).

As plaintiff correctly argues in response (Doc. #37, p. 21), the rescue doctrine is not implicated by plaintiff's negligent rescue claim. <u>See</u> <u>Krajcsik v. Ramsey</u>, 2017 WL 3868560, *2 n.4 (D. Md. Sept. 5, 2017) ("The rescue doctrine is related to, but separate from, the affirmative duty to rescue an imperiled party that the courts impose on persons in some situations."). Accordingly, because the rescue doctrine is not applicable, Laxmi's request for dismissal based on the doctrine is denied.[9]

## 6. Aiding and Abetting, Harboring, Confining, Coercion and Criminal Enterprise

Finally, Count VI of the Complaint asserts a claim of aiding and abetting against Laxmi. (Doc. #1, ¶¶ 226.) Plaintiff accuses Laxmi of "aiding and abetting unlawful activity including unlawful confinement, imprisonment, assault and battery by [plaintiff's] sex traffickers and 'Johns.'" (<u>Id.</u>) Laxmi argues the claim must be dismissed because (1) it asserts Laxmi "aided and abetted the criminal act of sex trafficking in violation of the TVPRA," and (2) the TVPRA does not provide a cause of action for aiding and

---

[9] Laxmi also suggests hotels only have a limited duty to render aid to a guest it knew or should have known was ill or injured, and that the Complaint contains no plausible facts to suggest Laxmi knew plaintiff was in need of aid. (Doc. #13, p. 21.) However, the Court finds the Complaint contains sufficient allegations to satisfy this requirement. (Doc. #1, ¶¶ 97-98, 221.)

abetting.  (Doc. #13, p. 22.)  Having reviewed the allegations in the Complaint and the relevant case law, the Court finds Laxmi is misinterpreting the claim.

Florida courts have recognized aiding and abetting the commission of a tort as a standalone claim.  See Gilison v. Flagler Bank, 303 So. 3d 999, 1002 (Fla. 4th DCA 2020) (aiding and abetting fraud); MP, LLC v. Sterling Holding, LLC, 231 So. 3d 517, 527 (Fla. 3d DCA 2017) (aiding and abetting breach of fiduciary duty).  This Court has previously listed the following elements that must be alleged "to state a claim for aiding and abetting a common law tort" under Florida law: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter [sic]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor."  Angell v. Allergan Sales, LLC, 2019 U.S. Dist. LEXIS 142768, 2019 WL 3958262, at *8 (M.D. Fla. Aug. 22, 2019); see also Lawrence v. Bank of Am., N.A., 455 F. App'x 904, 906 (11th Cir. 2012) (applying the above elements to three Florida tort claims). These cases demonstrate Florida recognizes a common-law claim of aiding and abetting tortious conduct.

Here, the Complaint alleges Laxmi aided and abetted plaintiff's unlawful harboring, confinement, imprisonment, assault and battery, and to the extent the claim alleges Laxmi has actual

knowledge,[10] the Court finds it sufficient to state a claim. Accordingly, the Court denies Laxmi's request for dismissal.

## D. More Definite Statement

Finally, Laxmi asserts that the Complaint is vague, ambiguous, and fails to provide sufficient information to allow Laxmi to formulate a response. (Doc. #13, pp. 22-23.) Laxmi requests the Court exercise its discretion and order plaintiff provide a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. (Id.)

Pursuant to Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); see also Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs., 872 F. Supp. 2d 1353, 1358 (S.D. Fla. 2012) (quoting Ramirez v. FBI, No. 8:10-cv-1819-T-23TBM, 2010 U.S. Dist. LEXIS 132271, 2010 WL 5162024, at *2 (M.D. Fla. Dec. 14, 2010)) ("A Rule 12(e) motion is appropriate if the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself].").

---

[10] "[A]llegations which demonstrate merely constructive knowledge, recklessness or gross negligence cannot satisfy the 'knowledge' element of an aiding and abetting claim under Florida law." Angell, 2019 WL 3958262, *9.

The Court finds the Complaint is not "so vague or ambiguous" that Defendant could not reasonably respond. Euro RSCG Direct Response, 872 F. Supp. 2d at 1358 ("[A Rule 12(e)] motion is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail."); Eye Care Int'l, Inc. v. Underhill, 92 F. Supp. 2d 1310, 1316 (M.D. Fla. 2000) (noting that "motions for a more definite statement are not favored in light of the liberal discovery practice," and that "a motion for more definite statement is not to be used as a substitute for discovery"); cf. LeBlanc v. LVNV Funding, LLC, No. 2:19-cv-285-FtM-99MRM, 2019 U.S. Dist. LEXIS 99983, at *1 (M.D. Fla. June 14, 2019) (granting motion for more definite statement, finding "the Complaint contains no facts" and was "not sufficiently specific to place defendant on notice of the claims against it").

Here, Plaintiff has provided specific facts about the elements of each cause of action, Defendant's purported knowledge and participation in ongoing and continuous sex trafficking at the Super 8 by Wyndham Naples in Naples, Florida, that occurred from 2014 through February 2016 with respect to Plaintiff, and its failure to prevent this criminal conduct, which ultimately resulted in Defendant profiting from the trafficking. The Court finds such allegations are sufficiently specific to place Defendant on notice of the claims against it, and as such, Defendant's Motion for a More Definite Statement is denied.

Accordingly, it is hereby

**ORDERED:**

1. Defendant Laxmi of Naples, LLC's Motion to Dismiss, Motion
   to Strike, or For a More Definite Statement and Memorandum
   of Law in Support Thereof (Doc. #13) is **DENIED.**

2. Defendant Wyndham Hotels & Resorts, Inc.'s Motion to
   Dismiss Plaintiff's Complaint (Doc. #14) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this ___6th___ day of May,
2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record